# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LANCE POUGH, | Case No. 1:24-cv-2016 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge James E. Grimes, Jr. |
| STEVE WEISHAR, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Lance Pough, an inmate representing himself, brings this action under Section 1983 against the Grafton Correction Institution prison investigator, Steve Weishar, and the Chairman of the Rules Infraction Board, John Faltay, in their individual and personal capacities. Defendants move to dismiss. For the following reasons, the Court **GRANTS** the motion.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the Court must on the motion before it, Plaintiff bases his claims on the following events.

### A. The Alleged Assault

Although Plaintiff Lance Pough is currently incarcerated at North Central Correctional Institution in Marion, Ohio, the relevant events occurred while he was an inmate at Grafton Correctional Institution in Lorain County, Ohio. (ECF No. 1, ¶¶ 1 & 65 PageID #2.)

In June 2022, there was an attempted assault on a Grafton inmate that resulted in an internal prison investigation into Mr. Pough. (*Id.*, ¶¶ 10–19, PageID #4–7.) According to the complaint, inmate Allen Oliver warned Mr. Pough "to stay away from inmate Donny Berry because prison officials were investigating him and were going to pick him up." (*Id.*, ¶ 10, PageID #4.) Instead, Mr. Pough told Berry about the warning he was given. (*Id.*) As a result, Berry and Oliver had an "argument and verbal dispute." (*Id.*) Because Berry was "shouting loudly" during the dispute, Oliver felt threatened and sought out another inmate to "assault and fight" Berry on his behalf. (*Id.*) Berry asked inmate Bobby Nolan to "find someone who could do the job." (*Id.*) Nolan recruited inmate Lloyd Kelley Jr. (*Id.*) Kelley attempted to assault Berry, but the two ended up talking instead. (*Id.*, ¶ 11, PageID #4–5.) During their conversation, Kelley explained to Berry that he had been sent by Nolan and Oliver to assault him. (*Id.*)

Because of the attempted assault on Berry, Mr. Pough was placed in temporary confinement. (*Id.*, ¶ 15, PageID #5–6.) Unbeknownst to Mr. Pough, he was investigated and put into confinement because Nolan, Oliver, and Kelley allegedly informed Investigator Weishar that Mr. Pough was the mastermind behind the attempted assault on Berry. (*Id.*, ¶¶ 10–19, Page ID# 4–7.) Therefore, Investigator Weishar filed a conduct report against Mr. Pough for violating Rule 4 (causing, or attempting to cause, physical harm to another) and Rule 60 (attempting to commit, aiding another in the commission of, soliciting another to commit, or entering into an agreement with another to commit any of the above acts) for his alleged involvement

in the attempted assault on Berry. (*Id.*, ¶ 22, PageID #8; ECF No. 1-3, PageID #32.) The underlying conduct report did not include the names of accusers, victims, or the time and location where the alleged incident took place. (*Id.*, ¶ 22, PageID #8.) In July 2022, Mr. Pough was formally charged with violating Rule 4 and Rule 60 and subjected to two hearings of the rules infraction board, which Lt. Faltay oversaw. (*Id.*, ¶ 3, PageID #2.)

Mr. Pough claims that Investigator Weishar and Lt. Faltay's actions during the investigation and disciplinary proceedings violated his constitutional rights. (*Id.*, ¶¶ 2–9, PageID #2–4.) Because Investigator Weishar and Lt. Faltay had different roles in the underlying disciplinary proceedings, and Mr. Pough obtained knowledge of their actions at different times, the Court outlines the events giving rise to the claims against each Defendant separately.

**B.     Lt. Faltay**

When Mr. Pough was formally charged with violating Rule 4 and Rule 60 for his alleged involvement in the assault of inmate Berry, Lt. Faltay served as the Chairman of the Rules Infraction Board at Grafton Correctional Institution and acted as a decisionmaker on the board. (*Id.*, ¶ 3, PageID #2.)

In July 2022, Mr. Pough was formally charged with violating Rule 4 and Rule 60 for his alleged involvement in the assault on Berry. (*Id.*) And his first disciplinary hearing was scheduled for July 20, 2022. (*Id.*, ¶ 23, PageID #8.) Immediately preceding the hearing, on July 20, 2022, Lt. Faltay allegedly told Mr. Pough that he would "find him guilty based on events that preceded the alleged assault." (*Id.*, ¶ 25, PageID #9.) Mr. Pough claims that inmate Kenneth Livingston

3

witnessed this interaction. (*Id.*; ECF No. 1-10, ¶¶ 4–5, PageID #39.) Because of the interaction, Mr. Pough told Lt. Faltay during the hearing that he was "biased and predisposed" against him, which Lt. Faltay allegedly did not deny. (ECF No. 1, ¶¶ 26–27, PageID #9–10.)

Mr. Pough was found guilty at the initial hearing and appealed the decision. (*Id.*) While his appeal was pending, and without Mr. Pough's knowledge, the Warden's Administrative Review Board reversed and returned the July 20 decision for reconsideration. (*Id.*, ¶ 28, PageID #10.) The review board based its decision on Lt. Faltay's failure to find credible the statements of the confidential informants who provided the basis for the report. (*Id.*)

Then, on July 28, 2022, Mr. Pough was unexpectedly called to a second hearing for the same alleged assault. (*Id.*, ¶ 29, PageID #10.) Mr. Pough contends that, because he did not receive prior notice of this hearing, he was unable to call certain witnesses for his defense. (*Id.*, ¶ 30, PageID #10.) The second panel comprised of Lt. Faltay and Mr. Tolley, who again found Mr. Pough guilty of violating Rule 4 and Rule 60. (*Id.*, ¶ 32, PageID #11; ECF No. 1-6, PageID #35.)

Mr. Pough appealed this decision to the Warden, but this time the decision was affirmed. (ECF No. 1-8, PageID #37.) Therefore, Mr. Pough appealed to Legal Services, which also upheld the board's decision. (ECF No. 1, ¶ 32, PageID #11; ECF No. 1-9, PageID #38.) Because of the guilty finding, Mr. Pough's security level was increased from a level one to a level three in September 2022. (ECF No. 1, ¶ 3,

PageID #3–4.) With an increased security level, Mr. Pough was transferred from Grafton to Mansfield Correctional Institution. (ECF No. 1, ¶ 9, PageID #3.)

### C. Investigator Weishar

In August 2023, Kelley was transferred to Mansfield. (*Id.*) There, he encountered Mr. Pough. (*Id.*) Kelley informed Mr. Pough about the alleged conspiracy between himself and inmates Oliver and Nolan to blame the attempted assault of inmate Berry on Mr. Pough. (*Id.*; ECF No. 1-1, PageID #18.) Additionally, Kelley detailed Investigator Weishar's alleged conduct surrounding Mr. Pough's 2022 disciplinary actions. (*Id.*, ¶ 9, PageID #3.)

According to the complaint, Investigator Weishar told Kelley that he "wanted to get Pough off the compound . . . because . . . Pough had previously filed complaints and grievances against his co-worker," Officer Judkins. (*Id.*, ¶ 19, PageID #7.) According to Mr. Pough, in 2022 he filed a lawsuit against members of Grafton's parole board, which led to allegedly retaliatory searches of his property by Officer Judkins and prompted Mr. Pough to file a grievance. (*Id.*, ¶ 36, PageID #13.)

Before the investigation into Mr. Pough for the assault on Berry, Investigator Weishar allegedly told Kelley that "his statements don't have to be true, and [Investigator Weishar] doesn't care if they are true, as long as they are corroborated by other inmate statements." (*Id.*, ¶ 20, PageID #7.) Based on this information, Mr. Pough filed an internal complaint against Investigator Weishar for retaliatory conduct on July 31, 2024. (*Id.*, ¶ 34, PageID #3.)

On August 6, 2024, the prison's seven-day deadline to respond to Mr. Pough's complaint expired. (*Id.*) Therefore, Mr. Pough filed a second complaint and, again,

5

did not receive a response within the deadline. (*Id.*) Mr. Pough attempted to escalate the complaint to a grievance. (*Id.*) However, his assigned prison tablet was not functional at that time. (*Id.*) Despite requesting the assistance of both the prison inspector and ViaPath/GTL officials to file his grievance, Mr. Pough received no help. (*Id.*) Ultimately, Mr. Pough was unable to escalate his complaint to a grievance within the prison system. (*Id.*, ¶ 35, PageID #12.)

## STATEMENT OF THE CASE

On September 11, 2024, Mr. Pough sent a handwritten complaint under Section 1983, which was received on September 16, 2024. (ECF No. 1-16, PageID #47.) But it was not accepted because there was no filing fee or motion to proceed *in forma pauperis*. (ECF No. 1-13, PageID #43.) Then, Mr. Pough filed a motion to proceed *in forma pauperis*, and the amended complaint was docketed on November 18, 2024. (ECF No. 1; ECF No. 2.) Included with the complaint were affidavits from inmates allegedly involved in the conspiracy against him. (ECF No. 1-1; ECF No. 1-10; ECF No. 1-11.)

Under Rule 15(c), an amendment to a complaint relates back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). "When a petitioner files for permission to file [*in forma pauperis*], a complaint is considered filed on the day the clerk's office receives both the complaint and the application to proceed IFP." *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004). Mr. Pough's initial filing was rejected because it

was filed without a motion to proceed in forma pauperis and without payment of the filing fee. (ECF No. 1-13, PageID #43.) Though Mr. Pough's complaint is titled "Amended Complaint 15(C) Relate Back," the complaint was not considered filed until Mr. Pough filed his motion to proceed *in forma pauperis*, which was on November 18, 2024. Therefore, Mr. Pough's second complaint does not relate back to his initial attempted filing and is considered filed on November 18, 2024.

Defendants move to dismiss the case for failure to state a claim, and raise arguments based on the statute of limitations, the Eleventh Amendment, and qualified immunity. (ECF No. 13, PageID #131.)

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint" and is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

7

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But a pleading must offer more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth). A plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

Although the pleadings and documents *pro se* litigants file are liberally construed and held to less stringent standards than the formal pleadings of lawyers,

*Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), litigants who do not have a lawyer are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Even a *pro se* complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to avoid dismissal. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Section 1983 does not provide a statute of limitations. Therefore, federal courts borrow the applicable limitations period from the most analogous one available under State law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *see Owens v. Okure*, 488 U.S. 235, 249–50 (1989). For the claims Plaintiff asserts, the most analogous statute is Ohio's two-year limitations period in Section 2305.10(A) of the Ohio Revised Code. Ohio Rev. Code § 2305.10; *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).

But federal law governs when a plaintiff's federal claims against a defendant accrue. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see Green v. City of Southfield*, 759 F. App'x 410, 414 (6th Cir. 2018) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). "The statute of limitations commences when the plaintiff knows or has reason to know of the injury which is the basis of h[is] action." *Green*, 759 F. App'x at 414 (quoting *Sevier*, 742 F.2d at 273) (cleaned up). Under the discovery rule, however, equitable tolling delays the accrual of the statute of limitations until the plaintiff

9

knew or should have known of the injury which is the basis of the claim. *Sevier*, 742 F.2d at 273. "This inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citation omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273 (citing *Briley v. California*, 564 F.2d 849, 855 (9th Cir. 1977)).

It is generally inappropriate to dismiss claims based on a statute of limitations at the motion to dismiss stage. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (citation omitted). But if the allegations in the complaint "affirmatively show" that a claim is time barred, then dismissal is warranted. *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)).

Defendants contend that Plaintiff's entire complaint is time barred. (ECF No. 13, PageID #135–36.) Because Plaintiff allegedly obtained knowledge of Defendants' actions at different times, equitable tolling applies differently to the claims against each Defendant.

**I.     Lt. Faltay**

Plaintiff's claims against Lt. Faltay arise from his alleged bias against Mr. Pough at the two hearings of the rules infraction board and the "lack of notice" of the second hearing, which Plaintiff contends violated his constitutional rights by denying him the ability to call witnesses on his behalf. (ECF No. 1, PageID #1.) Other

10

than the conduct or facts relating to the hearings, Plaintiff bases his claims against Lt. Faltay on no other allegations.

Construing the complaint in favor of Plaintiff, Mr. Pough knew of the perceived bias at the time of the second hearing when it occurred on July 28, 2022. *Sevier*, 742 F.2d at 273. Indeed, Plaintiff argued in his appeal of that decision that Lt. Faltay "was biased and predisposed and not impartial at the July 28, 2022 R.I.B. hearing based on his conduct during the July 20, 2022 R.I.B. hearing." (ECF No. 1, PageID #11.) Therefore, Plaintiff's cause of action against Lt. Faltay accrued on July 28, 2022. Because Plaintiff's complaint was deemed filed on November 18, 2024, his complaint was filed outside the two-year statute of limitations. Plaintiff's claims against Lt. Faltay are untimely.

## II. Investigator Weishar

Plaintiff claims that Investigator Weishar retaliated against him. To determine when Plaintiff's claims against Investigator Weishar accrued, the Court must determine when Plaintiff knew or had reason to know of the *injury* that is the basis for his retaliation claim. *Sevier*, 742 F.2d at 273.

Defendants do not take a firm position on when Plaintiff's claims for retaliation against Investigator Weishar accrued. Instead, they contend that the factual allegations regarding Plaintiff's retaliation claim could have occurred on various dates: (1) at the earliest on July 13, 2022 when Investigator Weishar issued the conduct report (ECF No. 15, PageID #159); (2) on July 22, 2022 when Mr. Pough was found guilty at the hearing of the rules infraction board (ECF No. 13, PageID #136); or (3) at the latest on August 15, 2022 when Mr. Pough filed his appeal with the Office

11

of Chief Legal Counsel (ECF No. 15, PageID #158–59).  Although Defendants do not identify it as a potential accrual date, Plaintiff's appeal to the Office of Chief Legal Counsel was not complete until September 14, 2022.  (ECF No. 1-9.)

**II.B.1. Exhaustion**

Plaintiff did not argue for tolling of the statute of limitations for his claims against Investigator Weishar.  Instead, Plaintiff argues that he "attempted to exhaust the retaliation claim" by filing complaints against Investigator Weishar and escalate them to grievances.  (ECF No. 14, PageID #145.)  Specifically, Plaintiff asserts that he filed his first complaint against Investigator Weishar on July 31, 2024, to which there was not a response until after the "7 day deadline" of August 6, 2024.  (*Id.*)  Plaintiff filed a second complaint after that deadline, on an unspecified date in August 2024.  (*Id.*)  He states that he never received a response to either complaint.  (*Id.*)  Additionally, Plaintiff claims that he attempted to escalate both complaints to grievances but was unable to do so because the "escalation button/process on the phone tablet was inoperable and would not work."  (*Id.*)  Only after these administrative remedies failed, through no fault of his own, did Plaintiff file this lawsuit.  (ECF No. 1-16, PageID #47.)  Based on these events, Plaintiff maintains that the statute of limitations does not bar his claims against Investigator Weishar.  (ECF No. 14, PageID #146.)

The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C § 1997e(a).

Because the statute unambiguously requires administrative exhaustion as a threshold to litigation, the statute of limitations for a civil rights action may be tolled for the time in which these remedies are being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *see also Waters v. Evans*, 105 F. App'x 827 (6th Cir. 2004) (applying *Brown* to a prisoner's Section 1983 claim).

Plaintiff appears to argue that his lawsuit is timely because he was unable to exhaust, such that the limitations period did not begin to run or was tolled. This argument fails. Plaintiff filed his administrative complaints against Investigator Weishar well outside the fourteen-day deadline to do so. *See* Ohio Admin. Code § 5120–9–31(J)(1) (requiring an inmate to file an informal complaint within fourteen calendar days of the incident). The incident involving Investigator Weishar occurred on July 13, 2022 when he filed the conduct report against Plaintiff. And Plaintiff's appeal to the Office of Chief Legal Counsel was not complete until September 14, 2022. Even this latter date is nearly two years before Plaintiff filed his first administrative complaint on July 31, 2024. Under the Act, compliance with prison grievance procedures is all that is required to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because Plaintiff did not follow the required administrative procedures, the attempted filing of an administrative complaint and escalation to a grievance some two years after the conduct at issue cannot provide a basis for tolling the statute of limitations. However, the failure to exhaust does not bar this complaint because Defendants did not raise failure to exhaust administrative remedies as a defense.

(ECF No. 13.) Therefore, they forfeited the defense. *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004).

### III.B.2. Equitable Tolling

Equitable tolling might not apply in all cases, particularly in retaliation cases like this one. *See Reguli v. Russ*, 109 F.4th 874, 885 (6th Cir. 2026) (White, J., concurring) ("I would not relegate the discovery of a retaliatory motive in cases where retaliation is an element of the claim to the domain of equitable tolling in all cases. This is especially so because equitable tolling, unlike accrual, is generally determined under state law.") Nevertheless, the Court, as it must, liberally construes the complaint in Plaintiff's favor and considers whether equitable tolling applies to Plaintiff's claims against Investigator Weishar.

Plaintiff claims that he did not discover Investigator Weishar's alleged retaliation until August 2023 when Kelley informed him that there was a "conspiracy . . . to place blame on [him] for the assault and attempt[ed] assault on inmate Donny Berry." (*Id.*, ¶ 9, PageID #3.) Even so, his lawsuit is untimely for two reasons.

*First*, the complaint, construed in Plaintiff's favor, shows that he did not act with reasonable diligence to pursue his claims. August 2023 still fell within the limitations period. The latest accrual date for Plaintiff's claims against Investigator Weishar is September 14, 2022. Therefore, if Plaintiff had acted with reasonable diligence, he could have exhausted his administrative remedies and/or filed suit before expiration of the limitations period. *Sevier*, 742 F.2d at 273 (citing *Briley*, 564 F.2d at 855). But Plaintiff waited almost a year—until July 31, 2024—to file an

14

informal complaint. And he did not file this complaint until November 18, 2024. Indeed, Plaintiff provides no justification for this delay. Although Plaintiff had the necessary information providing the basis for his claims against Investigator Weishar with in the limitations period, and months to spare before its expiration, he failed to pursue his claims with reasonable diligence.

*Second*, in determining whether equitable tolling applies, courts focus on the harm incurred, not the plaintiff's knowledge of the underlying facts that gave rise to the harm. *Friedman*, 929 F.2d at 1159 (citation omitted). This principle is consistent with the general legal rule that a statute of limitations runs from when a tort was committed, even if the injured party did not know or have reason to know of the tort. *See Reguli*, 109 F.4th at 887 (Murphy, J., concurring) ("[A] broad discovery rule conflicts with . . . traditional principles. Even as late as 1939, the Restatement of Torts noted that many States continued to adhere to the view that 'the statutory period runs from the time the tort was committed although the injured person had *no knowledge or reason to know of it*.'" (citation omitted)).

Plaintiff should have known of the harm about which he complains by September 14, 2022, at the latest. The fact that he did not learn of the underlying facts until a year later—still within the limitations period—does not make his claims timely. For these reasons, equitable tolling does not apply to Plaintiff's claims against Investigator Weishar, and the claims are time barred.

15

## CONCLUSION

Plaintiff Lance Pough makes serious allegations that merit further investigation and due consideration by the appropriate authorities. Because Plaintiff's claims are time barred, this case is not the appropriate means for doing so. Accordingly, those efforts fall to others to undertake.

For all the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss (ECF No. 13).

**SO ORDERED.**

Dated: February 9, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio